UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPE COD HEALTHCARE, INC.,<br><br>Defendant. | Civil Action No. _____<br><br>[Massachusetts Superior Court Case No. 2272CV00493]<br><br>**DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1442(a)(1)** |

## NOTICE OF REMOVAL

Longstanding federal government policy has encouraged and incentivized healthcare institutions to create a health information technology infrastructure that increases patient access to, and use of, electronic health records ("EHR"). Plaintiff now challenges Defendant Cape Cod Healthcare, Inc.'s ("CCHC") use of ubiquitous website technology as part of its efforts to implement this federal policy and promote patient engagement with EHR and access to care at its facilities. This suit, therefore, belongs in federal court. CCHC removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and sets forth below a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).[1]

**I.    NATURE OF THE REMOVED ACTION**

1.    On December 8, 2022, Plaintiff – who is attempting to litigate anonymously, using the pseudonym Jane Doe – filed a purported Class Action Complaint ("Complaint") against CCHC

---

[1] CCHC is the named defendant and appears here in the exercise of its rights of removal under federal law. CCHC reserves all procedural, substantive, and other defenses, arguments, and claims available in response to the Complaint, including without limitation the defense that CCHC is not a provider or covered entity and is an improper defendant.

in Barnstable County Superior Court, Case No. 2272CV00493. Plaintiff served the Complaint on CCHC on or after December 16, 2022.

2. CCHC is a Massachusetts non-profit charitable corporation that is the sole member of Cape Cod Hospital, Falmouth Hospital Association, Inc., and JML Care Center, Inc.

3. The Complaint is one of several nearly-identical complaints that Plaintiff's counsel has filed against healthcare institutions. Among these cookie-cutter complaints is one filed October 18, 2022, in Norfolk County, against Atrius Health, Inc. Atrius removed that case to U.S. District Court in a Notice of Removal filed December 23, 2022 (22-cv-12196-FDS).[2] As is discussed below, Plaintiff has modified this Complaint slightly in a transparent and inadequate effort, through artful pleading, to attempt to frustrate the proper removal of this case to federal court.

4. Plaintiff alleges that CCHC disclosed information about Plaintiff and other "patients – including their status as patients, their physicians, their medical treatments, the hospitals they visited, and their personal identities – to Facebook and other third parties without their patients' knowledge, authorization, or consent." Complaint ¶ 3. Plaintiff further alleges that "Defendant discloses this protected health information through the deployment of various digital marketing and automatic rerouting tools embedded on its websites that purposefully and intentionally redirect patients' personal health information to third parties who exploit that information for advertising purposes." *Id.* ¶ 4.

5. Plaintiff does not, however, allege that CCHC disclosed social security numbers, financial account information, or dates of birth to third parties. Rather, the identifiers that are the

---

[2] Plaintiff's counsel has also filed a similar complaint against UMass Memorial Healthcare, Inc. in Worcester County. UMass removed that case to U.S. District Court in a Notice of Removal filed November 28, 2022 (22-cv-12022).

basis for Plaintiff's claims are internet protocol (IP) addresses, "internet cookies," "browser-fingerprints," and "Facebook IDs." *Id.* ¶¶ 30-41.

6.  Plaintiff does not cite to any Massachusetts statute or regulation that includes these identifiers in any definition of "personally identifiable information" or "protected health information." That is because the claim that these "identifiers" should be protected arises from the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA). *See* 45 C.F.R. § 164.514(b)(2) (which includes IP addresses, device identifiers, and "[a]ny other unique identifying number" among a list of identifiers that must be removed for health information to be considered "de-identified"); Complaint ¶¶ 95, 104.

7.  Nonetheless, Plaintiff claims that CCHC's operation of its websites violates Massachusetts law, including G.L. c. 272, § 99 (Interception of Wire and Oral Communications), G.L. c. 214, § 1B (Right to Privacy), and G.L. c. 111, § 70E (Patients' and Residents' Rights). *Id.* ¶5.

8.  These claims fail on the merits for a host of reasons unrelated to this Notice of Removal. But they also directly implicate federal interests, making this action removable from state court under the federal officer removal statute, 28 U.S.C. § 1442(a).

## II.    BASIS FOR REMOVAL

9.  CCHC removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a). Section 1442(a) authorizes removal of civil actions commenced in state court against "any officer (or any person acting under that officer) of the United States or any agency thereof . . . for or relating to any act under color of such office." *Id.* § 1442(a)(1).

10. There is no presumption against federal officer removal, *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 38 (D. Mass. 2020); to the contrary, the federal officer removal statute must be "liberally construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142,

147 (2007). The Supreme Court has cautioned that the policy favoring federal officer removal "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

11. To satisfy the minimal burden for removal, CCHC must show (1) that it is a "person" who was "acting under a federal officer's authority," (2) that "the charged conduct was carried out 'for or relating to' the asserted official authority," and (3) that it "will assert a colorable federal defense." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 34 (1st Cir. 2022) (citation omitted); *Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989).

12. As explained in greater detail below, CCHC satisfies all three requirements. First, CCHC qualifies as a "person" under Section 1442(a)(1) because it is a corporation. CCHC "act[ed] under federal officer authority" because it developed its website and patient portal for its member institutions and clinicians as part of their participation in federal programs aimed to create nationwide infrastructure for EHR. Second, all of the Complaint's challenged conduct "relat[es] to" CCHC's efforts under federal programs like the Meaningful Use program and Merit-based Incentive Payment System ("MIPS") to enhance patient engagement and expand access to EHR. Third, CCHC intends to assert colorable federal defenses to Plaintiff's claims.

13. Courts across the country have repeatedly upheld federal removal of similar cases against similar providers. *See Doe I v. UPMC*, 2020 U.S. Dist. LEXIS 136077, *24 (W.D. Pa. Jul. 31, 2020) (denying plaintiffs' motion to remand in case involving similar claims against private healthcare provider); *Doe v. ProMedica Health Sys., Inc.*, 2020 U.S. Dist. LEXIS 244916, *8 (N.D. Ohio Oct. 30, 2020), *appeal denied*, 2020 U.S. Dist. LEXIS 244914 (N.D. Ohio Dec. 14, 2020) (same).

4

### III.    BACKGROUND ON CCHC'S WORK WITH THE RELEVANT FEDERAL AUTHORITIES.

14.     Since 2004, the federal government has strived to achieve "the nationwide implementation of interoperable health information technology in both the public and private health care sectors."[3]  These efforts included establishing an Office of the National Coordinator for Health Information Technology ("ONC") within the Department of Health and Human Services ("HHS") and appropriating billions of dollars of federal funds to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]."  111 Pub. L. No. 5, 123 Stat. 115, 246 (codified at 42 U.S.C. § 300jj-31).

15.     To achieve these ambitions, the ONC decided to work together with private healthcare providers like those in the CCHC corporate family to build the necessary infrastructure.  Since private providers have direct access to millions of patients, the government has worked with these providers to improve their "ability to influence patient engagement by providing a wider range of technologies and methods for a patient's use."  Medicare and Medicaid Programs; Electronic Health Record Incentive Program-Stage 3 and Modifications to Meaningful Use in 2015 Through 2017, 80 Fed. Reg. 62,761, 62,848 (Oct. 16, 2015).  The ONC also issues guidance to providers like those owned by CCHC, including guidance requiring "federal agencies" to "collaborate with . . . private stakeholders to . . . [b]uild a culture of electronic health information access and use."[4]

---

[3] Exec. Order No. 13,335, 69 Fed. Reg. 24,057 (Apr. 27, 2004), available at https://www.govinfo.gov/content/pkg/WCPD-2004-05-03/pdf/WCPD-2004-05-03-Pg702.pdf.

[4] ONC, *Federal Health Information Technology Strategic Plan 2015-2020* 1, 8, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it-strategic-plan-2015-2020.php.

16.     The federal government's campaign also included Medicare and Medicaid EHR incentive and interoperability initiatives.  In 2011, for instance, CMS established the Meaningful Use program to increase patients' "meaningful use" of and engagement with their EHR.[5]  These and related programs (including MIPS) offer incentive payments to institutional and individual providers that prepare program reports and demonstrate increased patient engagement.[6]  The patient engagement requirements include implementing certified EHR technology based on federal standards to help patients access their medical records.  *See* 45 C.F.R. §§ 170.102; 170.315.  CMS recommends that providers create patient "portals" to help patients interact with them and access their EHR.  CMS advises that providers should "actively promote and facilitate portal use."[7]

17.     HHS requires that providers demonstrate increased patient engagement over time. Early on in the Meaningful Use program, providers could earn incentive payments if they did so. Now, a failure to satisfy patient engagement or interoperability standards means reductions in Medicare and other federal program payments for services.  *See, e.g.,* 42 U.S.C. § 1395w-4(a)(7). For example, the Meaningful Use program set an objective for providers to "[p]rovide patients the ability to view online, download, and transmit their health information within 4 business days

---

[5] *See* CMS.gov, *Promoting Interoperability Programs*, available at https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms.

[6] *See id.* (noting history of interoperability programs); CMS.gov, *Traditional MIPS Overview*, available at https://qpp.cms.gov/mips/traditional-mips (describing promoting interoperability component); CMS.gov, Promoting Interoperability Performance Category: Traditional MIPS Requirements, https://qpp.cms.gov/mips/promoting-interoperability (detailing 2022 MIPS requirements for Promoting Interoperability component).

[7] ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013), available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

of the information being available to the [provider]." 42 C.F.R. § 495.22(e)(8)(i). Providers had to demonstrate that a certain percentage of Medicaid patients could view, download, and transmit their health information to a third party (and that percentage threshold increased over time). *Compare id.* § 495.22(e)(8) (50 percent in 2015), *with id.* § 495.24(d)(5)(i)(B) (80 percent in 2019). The pieces of health information technology infrastructure that CCHC created and improved to allow its institutional and individual providers to meet these objectives included the public informational website CapeCodHealth.org ("Informational Website") and the password-protected CCHC patient portal at MyChart.CapeCodHealth.org ("Patient Portal").

**IV.  CCHC SATISFIES THE REQUIREMENTS FOR REMOVAL.**

  A.  <u>CCHC is a "person" that "act[ed] under federal officer authority" when it developed its website and portal with federal government guidance.</u>

  18.  Section 1442(a)(1) applies to "any person acting under" a federal officer. 28 U.S.C. § 1442(a)(1). Courts have repeatedly held that corporations qualify as "person[s]" under the statute. *See, e.g., Moore*, 25 F.4th at 34-38; *see also Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 357 n.9 (1st Cir. 2009). CCHC, a Massachusetts charitable non-profit corporation, qualifies as a "person."

  19.  The "acting under" requirement for federal officer removal must be "broad[ly]" and "liberally construed." *See Moore*, 25 F.4th at 34 n.3 (citing *Watson*, 551 U.S. 142 at 147). To "act[] under" a federal authority means "to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis in original).

  20.  CCHC "act[ed] under" federal authorities in multiple ways that Plaintiff now challenges. For example, CCHC's facilities and eligible clinicians have been longstanding participants in federal EHR incentive programs and initiatives, like the Meaningful Use program and MIPS. Through their participation in these programs and otherwise, CCHC has assisted (and

7

continues to assist) the federal government in carrying out its goal of creating a nationwide EHR infrastructure. As part of those efforts, CCHC ensured its Informational Website and Patient Portal met federal interoperability standards. CCHC also filed reports with the federal government attesting to CCHC's efforts to increase patient engagement, per government directive. CCHC refined its Informational Website (including with digital marketing tools) to drive and analyze patient engagement and to encourage patients to use the Patient Portal.[8]

21. CCHC undertook these actions under the purview of the ONC, which closely monitors how providers like CCHC's providers can help achieve the government's goal of promoting patient engagement. In return, the government has granted CCHC facilities and its other providers payments and direction through various federal programs and initiatives, including the Meaningful Use program and MIPS. Such exchanges are similar to a government-contractor relationship. *See Moore*, 25 F.4th at 34 n.3.

    B.    <u>CCHC's challenged conduct "relates to" its work with the federal government.</u>

22. The "for or relating to" element requires that the Plaintiff's claims must be "relate[d] to" actions CCHC took while "acting under" federal authority. *See Moore*, 25 F.4th at 35-36. "In 2011, Congress amended § 1442(a)(1) to allow removal based on a suit 'for <u>or relating to</u> any act under color of [federal] office,'" and since then "[c]ircuits have consistently given this requirement a broad reading and held that no causal link is required." *Id*. at 35 (emphasis in original). "Any single claim is independently sufficient to satisfy the 'for or relating to' requirement under § 1142(a)(1)." *Id*.

---

[8] The federal government itself has used digital marketing tools and patient portals to enhance patient engagement.

23. Multiple claims in the Complaint challenge CCHC for its actions that "relat[e] to" the work CCHC performed designing and administering its Informational Website and Patient Portal, while acting under federal authority. For example, in support of the wiretapping claim (Count I), Plaintiff contends that CCHC "aided in interception of 'contents'" of the putative class's communications, "including Log-Ins, Registrations" and the "precise text of patient communications about billing and payment." Complaint ¶ 174(h), (i). These activities occur in the Patient Portal that, as explained above, has been implemented pursuant to CMS recommendation and guidance.[9] Or, to the extent Plaintiff is complaining that CCHC added Patient Portal log-in links to the Informational Website, doing so promotes portal engagement and thus helps meet federal interoperability standards for EHR. The same is true for CCHC's efforts to make registration and billing available through the Patient Portal. The wiretapping claim thus "relat[es] to" CCHC's role in carrying out the federal government's goal of driving patient engagement and creating a national infrastructure for EHR. Similar federal government connections can be found in Plaintiff's other claims.

24. Other courts have agreed that this type of challenged conduct "relat[es] to" a provider's work with the federal government. In *Doe v. UPMC*, for example, the plaintiffs also asserted state law claims against a defendant healthcare system based on alleged disclosure of personally identifiable information to third parties for marketing purposes. *UPMC*, 2020 U.S. Dist. LEXIS 136077. The court held that, as a Meaningful Use participant, "UMPC must, among other things, raise awareness and increase usability of the UPMC website and [its] portal." *Id.* at *17. The court thus concluded that "there is plainly a connection . . . between

---

[9] Contrary to the allegations in the Complaint, however, CCHC does not use digital marketing tools in the Patient Portal.

UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id.* at *18-*19. The same is true for CCHC.

        C.      <u>CCHC intends to assert colorable federal defenses.</u>

25.      The final element for removal under Section 1442 requires that CCHC assert a single "colorable federal defense." *See Mesa v. California*, 489 U.S. 121, 129-30 (1989). A federal defense is "colorable" if it is not "wholly insubstantial and frivolous," even if it is not "clearly sustainable." *Moore*, 25 F.4th at 37 (citations omitted). When assessing whether a federal defense is colorable, "the burden is low, and the requirement has generally not proven an obstacle[.]" *Id.* at 36 (citation and quotation omitted).

26.      The first colorable defense CCHC intends to assert is that the allegedly disclosed information was not protected under HIPAA. HIPAA underlies all of Plaintiff's claims. For example, Plaintiff's Complaint cites the HIPAA Privacy Regulations at 45 C.F.R. § 164.514 to support her assertion that the allegedly disclosed "patient names, IP addresses, and other unique characteristics or codes" are the type of information that the law prohibits from disclosure. Complaint ¶ 104. Plaintiff also cites the HIPAA Privacy Regulations for the assertion that the allegedly disclosed information includes protected health information, the disclosure of which is prohibited by law. Complaint ¶ 95 (citing both state statutes and 45 C.F.R. § 164.508). "Protected health information" is a HIPAA-defined term (45 C.F.R. § 160.103), and Plaintiff repeats allegations using this defined term throughout the Complaint. Complaint ¶¶ 4, 5, 95 as well as Captions A (p. 4), D (p. 16), F (p. 23) and J (p. 29). In order to address those allegations and claims, the Court will be required to interpret federal law.

27.     Apparently now aware that the copycat complaint would be subject to removal (as evidenced by the notices of removal filed in both the Atrius and UMass matters), Plaintiff's counsel made superficial edits to remove certain words (like "HIPAA") and additional citations to the HIPAA Privacy Regulations found in its form complaint filed against other Massachusetts providers.  Compare, for example, the Complaint filed by the same attorneys on October 18, 2022 in *Doe v. Atrius Health, Inc.*, (Mass. Sup. Ct. C.A. No. 2282CV00982) ¶¶ 35, 38, 42, 44, 100, 108-110, 121 with the Complaint filed several weeks later in this case, ¶¶ 32, 35, 39, 41, 95, 104-105, 116.  Cutting out the word HIPAA and some of the statutory and regulatory citations, however, does not transform Plaintiff's theory, much less change the fact that the Court must interpret federal law to address her allegations.  *See Federated Dep't Stores v. Moitie*, 452 U.S. 394, 397 n.2 (1981) ("courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum") (citation and quotation omitted).  CCHC has a colorable federal defense, based on federal law, that the items to which Plaintiff refers are not "protected health information" or otherwise governed by HIPAA.

28.     Alternatively, if HIPAA and Massachusetts law protect the allegedly disclosed information, CCHC would assert the colorable defense that HIPAA preempts the Massachusetts laws upon which Plaintiff relies, in whole or in part.  *See* 45 C.F.R. § 160.203.  Deciding that question necessarily requires interpreting and applying federal law.  *See U.S. ex rel. Health Outcomes Techs. v. Hallmark Health Sys.*, 2005 U.S. Dist. LEXIS 53913 *3-*5 (D. Mass. 2005) (finding that HIPAA, as a federal law, can preempt state law).

29.     Finally, if the allegedly disclosed information were protected, CCHC would have the further colorable defense that Plaintiff's state law claims are preempted in whole or in part under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (holding that federal

11

preemption applies where the relationship between defendant and the government is "inherently federal in character because the relationship . . . originates from, is governed by, and terminates according to federal law."). Federal district courts are the proper forum for evaluating *Buckman* preemption defenses. *Id.*; *UPMC*, 2020 U.S. Dist. LEXIS 136077, *22-23 ("Having already found that UPMC was 'acting under' DHHS when it engaged in the complained-of conduct, it follows that the relationship between UPMC and DHHS is 'inherently federal' in nature, such that the issue of whether Plaintiff's state-law claims are preempted under the principles articulated in *Buckman* should be decided by a federal court.").

## PROCEDURAL REQUIREMENTS

30. All of the procedural requirements for removal under 28 U.S.C. § 1446 are satisfied here.

31. CCHC is filing this Notice of Removal within 30 days after Plaintiff served CCHC on or after December 16, 2022. 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1)(C) (when end of period falls on a Saturday, the period continues to run until the next business day).

32. This Court is the corresponding federal court for the Barnstable County Superior Court of the Commonwealth of Massachusetts, where the suit was originally filed. Venue is therefore proper under 28 U.S.C. §§ 101 and 1441(a); *see also* L.R. 40.1(a), (d).

33. CCHC has attached a copy of the Complaint and all other publicly available filings from the state court docket as Exhibits 1-9.

34. Upon filing this Notice, CCHC will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Barnstable County Superior Court. 28 U.S.C. § 1446(d).

Dated: January 12, 2023                    Respectfully Submitted,

                                                                      CAPE COD HEALTHCARE, INC.,

                                                                      *By its attorneys,*

                                                                      */s/ Justin J. Wolosz*
                                                                      Justin J. Wolosz (BBO No. 643543)
                                                                      Adam Bookbinder (BBO No. 566590)
                                                                      CHOATE, HALL & STEWART LLP
                                                                      Two International Place
                                                                      Boston, MA 02110
                                                                      Telephone: 617-248-5000
                                                                      jwolosz@choate.com
                                                                      abookbinder@choate.com

## CERTIFICATE OF SERVICE

I, Justin J. Wolosz, do hereby certify that on this 12th day of January, 2023, I caused the foregoing document to be filed through the ECF system and to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and to be served via electronic mail and overnight mail upon counsel of record for the Plaintiff.

*/s/ Justin J. Wolosz*
Justin J. Wolosz

Dated: January 12, 2023